## Commonwealth v. Lee Line Company.

(Decided June 9, 1914.)

### Appeal from Henderson Circuit Court.

Taxation—Franchise Tax—Section 4077, Kentucky Statutes—Foreign Corporation.—A foreign corporation engaged in interstate commerce, and operating along navigable waters between this and other States a line of steamboats which touch at points in Kentucky for the purpose of receiving and discharging passengers and freight, and having no property subject to taxation in this State, is not subject to a franchise tax imposed by Section 4077, Kentucky Statutes.

IRA D. SMITH, JOHN C. DUFFY and BREATHITT & BREATHITT for appellant.

MONTGOMERY MERRITT for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The Lee Line Company is a foreign corporation, organized under the laws of the State of New Jersey, with its principal office in New York City, and a branch office at Memphis, Tennessee. It owns a line of steamboats which are enrolled in the port of New York. These boats ply between Memphis, St. Louis, Evansville, Louisville and Cincinnati, and also touch at certain points in Kentucky, for the purpose of receiving and discharging passengers and freight. The company owns no property of any kind in the State of Kentucky. Its boats have no situs here.

The question is: Is such company subject to a franchise tax by the State of Kentucky? The trial court held that it was not. The Commonwealth appeals.

Section 4077, Kentucky Statutes, is as follows:

"Every railway company or corporation, and guarantee or security company, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, turnpike company, palace car company, dining car company, sleeping car company, chair car company, and every other like company, corporation or association; also every other corporation, company or association having or exercising any special or exclusive privilege or franchise, not allowed by law to natural persons, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the State, and a local tax thereon to the county, incorporated city, town or taxing district, where its franchise may be exercised."

It may be conceded that appellee is engaged in the performance of a public service, and is, therefore, a member of that class of corporations of which a franchise tax may be required. The statute, however, does not embrace every such foreign corporation, regardless of whether it has a franchise from this State, or has property in this state, or is doing business in this State. It is well settled that where the State has jurisdiction of neither the person nor the property it is without power to tax. Thus in the case of St. Louis v. Ferry Co., 11 Wallace, 423, 20 L. Ed., 192, the court said:

"Where there is jurisdiction neither as to person nor property, the imposition of a tax would be *ultra vires* and void. If the Legislature of a State should enact that the citizens or property of another State or country should be taxed in the same manner as the persons and property within its own limits and subject to its authority, or in any other manner whatsoever, such a law would be as much a nullity as if in conflict with the most explicit constitutional inhibition. Jurisdiction is as necessary to valid legislative as to valid judicial action."

Again, in the case of Union Refrigerator Transit Co. v. Kentucky, 199 U. S., 193, 50 L. Ed., 150, the court, speaking through Mr. Justice Brown, said:

"The power of taxation, indispensable to the existence of every civilized government, is exercised upon the assumption of an equivalent rendered to the taxpayer in the protection of his person and property, in adding to

the value of such property, or in the creation and maintenance of public conveniences in which he shares—such, for instance, as roads, bridges, sidewalks, pavements, and schools for the education of his children. If the taxing power be in no position to render these services, or otherwise to benefit the person or property taxed, and such property be wholly within the taxing power of another state, to which it may be said to owe allegiance, and to which it looks for protection, the taxation of such property within the domicile of the owner partakes rather of the nature of an extortion than a tax, and has been repeatedly held by this court to be beyond the power of the Legislature, and a taking of property without due process of law.''

In view of the foregoing authorities, the case turns on whether or not this State has jurisdiction of appellee or of its property. Jurisdiction of the corporation for the purposes of taxation may be acquired by reason of the fact that it derives its franchise from the taxing authority. Thus the franchise of the Southern Pacific Railway Company is taxable in Kentucky, from which it derives its charter, though it exercises its franchise in other jurisdictions. Southern Pacific Co. v. Commonwealth, 134 Ky., 410.

Its ships, plying between the ports of New York and New Orleans, New York and Galveston, and New Orleans and Havana, not having acquired an actual situs elsewhere, are also taxable in Kentucky, on the ground that that is the domicile of the owner. Southern Pacific Co. v. Commonwealth of Ky., 222 U. S., 62, 56 L. Ed., 96; Commonwealth v. So. Pacific Co., 134 Ky., 417. Jurisdiction may also be acquired where the foreign corporation has property, and exercises its franchise, in the taxing State. Adams Express Co. v. Ky., 166 U. S., 171, 41 L. Ed., 960; Adams Express Co. v. Ohio State Auditor, 166 U. S., 185, 41 L. Ed., 965.

As said by Mr. Justice Brewer in Adams Express Co. v. Ohio State Auditor, 166 U. S., 218, 41 L. Ed., 976, the franchise to do, exercised in connection with the tangible property which it holds, creates ''a substantive matter of taxation to be asserted by every State in which that tangible property is found.'' Here the Lee Line Company is a foreign corporation, engaged in interstate commerce. It operates a line of boats along navigable waters lying between this and other States. This right

of navigation is not conferred by or under the control of this State, but is subject to Federal control alone. The only business that it does in this State is the mere temporary landing of its boats for the purpose of receiving or discharging freight or passengers at points in this State along the Ohio and Mississippi Rivers. It is admitted that it has no tangible property subject to taxation by this State. Our franchise tax on foreign corporations engaged in interstate commerce is sustained on the theory that it is a property tax; that is, a tax on the intangible property of the corporation. Adams Express Co. v. Ky., 166 U. S., 171; Henderson Bridge Co. v. Commonwealth, 99 Ky., 623; Henderson Bridge Co. v. Ky., 166 U. S., 150. Where, as in this instance, a foreign corporation engaged in interstate commerce along navigable waters has no tangible property taxable in this State, it is difficult to escape the conclusion that the imposition of a franchise tax is, in effect, a tax both on the privilege of engaging in interstate commerce and on the right to navigate navigable waters lying between this and other States, and, therefore, a burden which the State has no right to impose. The case is very similar to that of Gloucester Ferry Co. v. Com. of Pa., 114 U. S., 196, 29 L. Ed., 158, where the State of Pennsylvania attempted to tax the capital stock of the Ferry Company, a corporation organized under the laws of New Jersey, and having its principal place of business in that State. The company operated a line of steamboats between Gloucester, N. J., and Philadelphia. All of its property was located in New Jersey. It owned no property in Pennsylvania other than the lease of a dock. After reviewing the case of Pa. v. Standard Oil Co., 101 Pa. St., 119, wherein it was held that a tax on capital stock was a property tax, just as in this State a franchise tax is a property tax, Mr. Justice Field, speaking for the court, said:

"Under this decision there is no property held by the Gloucester Ferry Company which can be the subject of taxation in Pennsylvania except the lease of the wharf in that State. Whether that wharf is taxed to the owner or to the lessee it matters not, for no question here is involved in such taxation. It is admitted that it could be taxed by the State according to its appraised value. The ferry-boats of the company are registered at the port of Camden in New Jersey, and according to the decisions

in Hays v. Steamship Co. and in Morgan v. Parham
(*supra*), they can be taxed only at their home port. Ac-
cording to the decision in the Standard Oil Company
case, and by the general law on the subject the company
has no domicile in Pennsylvania, and its capital stock
representing its property is held outside of its limits. It
is solely, therefore, for the business of the company in
landing and receiving passengers at the wharf in Phila-
delphia that the tax is laid; and that business, as already
said, is an essential part of the transportation between
the States of New Jersey and Pennsylvania, which is
itself interstate commerce. While it is conceded that
the property in a State belonging to a foreign corpora-
tion engaged in foreign or interstate commerce may be
taxed equally with like property of a domestic corpor-
ation engaged in that business, we are clear that a tax
or other burden imposed on the property of either cor-
poration because it is used to carry on that commerce or
upon the transportation of persons or property, or for
the navigation of the public waters over which the trans-
portation is made, is invalid and void as an interference
with and an obstruction of the power of Congress in the
regulation of such commerce. This proposition is sup-
ported by many adjudications. Thus, in Gibbons v.
Ogden, the earliest and leading case upon the commer-
cial power of Congress, it was held that the Acts of New
York giving to Livingston and Fulton the exclusive right,
for a certain number of years, to navigate all the waters
within its jurisdiction with vessels propelled by steam,
were unconstitutional and void. Making the navigation
of those waters subject to a license of the grantee of the
State—that is, to such a tax or other burden as they
might levy—was an obstruction to commerce between
the States and in conflict with the laws of Congress re-
specting the coasting trade. 9 Wheat, 1. Although the
sole point in judgment was whether the State could regu-
late commerce on her waters in the face of such legisla-
tion by Congress, yet the argument of the court was that
such attempted control of the navigable waters of the
State was an encroachment upon the power of Congress
independently of that legislation.''

In the case under consideration the mere receiving
and landing of passengers and freight are but incident
to their transportation, and to the right of navigation.
The tax sought to be imposed in this case is necessarily
a tax upon interstate transportation, and upon the right

to navigate navigable waters lying between this and other States, and is, therefore, an invasion of the exclusive power of Congress to regulate such matters. The case of Louisville & Jeffersonville Ferry Co. v. Commonwealth, 108 Ky., 717, does not announce a contrary doctrine. There the Ferry Company had a franchise from this State, and had property in this State subject to taxation. Notwithstanding this fact, however, the judgment was reversed by the Supreme Court of the United States (L. & J. Ferry Co. v. Ky., 188 U. S., 384. 47 L. Ed., 513), on the ground that the franchise granted the Ferry Company by the State of Indiana was not taxable by the State of Kentucky, and could not be included in the valuation placed by the State on the Kentucky franchise. It will be seen, therefore, that the view of that court rather tends to support the conclusion herein reached.

Judgment affirmed.